Patrick M. Flatley
United States Bankruptcy Judge
**Dated: Wednesday, June 06, 2007 4:29:15 PM**

THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GREGORY J. FEDCZAK, | ) | Case No 05-3418 |
| | ) | |
| Debtor. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| UNITED BANK, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 05-195 |
| | ) | |
| v. | ) | |
| | ) | |
| GREGORY J. FEDCZAK | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

<u>**MEMORANDUM OPINION**</u>

United Bank, Inc. ("United Bank"), filed a complaint to deny Gregory J. Fedczak (the "Debtor")

a Chapter 7 discharge pursuant to 11 U.S.C. § 727(a)(2)(A) on the grounds that the Debtor concealed

property during the year preceding his bankruptcy filing with the intent to hinder, delay, or defraud his

creditors. At the trial in this case, United Bank sought to enlarge the scope of its complaint to include

allegations that the Debtor made false oaths or accounts under § 727(a)(4)(A), and that the Debtor failed

to satisfactorily explain the loss of assets under § 727(a)(5). The Debtor denies any conduct that would

cause his discharge to be denied.[1]

The court held a trial in this case on June 20, 2006, in Wheeling, West Virginia. At the completion of the hearing, the court ordered supplemental briefing. After that initial briefing was completed, United Bank moved to supplement the record with newly discovered evidence that the Debtor owned another business, Mooky Rebal, which the Debtor failed to disclose on his bankruptcy schedules. The court allowed United Bank to supplement the record, and gave an additional period of time for the Debtor to present evidence to rebut the new allegations. At the final hearing in this case on February 20, 2007, both parties stated that the record was now complete and ripe for review. After reviewing the submissions of the parties, the testimony, and the evidence adduced at trial, the court will grant the relief sought by United Bank and deny entry of the Debtor's discharge.

## I. BACKGROUND

Before filing bankruptcy, the Debtor served as president of W. Golden Concrete Construction, Inc. ("WGC"). Before her death on March 20, 1996, all the stock in WGC was held by Martha Frame, the Debtor's mother. Through Ms. Frame's will, the Debtor was to inherit her stock interest in WGC. The Debtor testified, however, that he was unaware of whether he owned the stock in WGC at the time he filed bankruptcy. In support of this statement, the Debtor related that he was unfamiliar with the terms of his mother's will when he filed bankruptcy, his mother's estate was likely insolvent, her will was never fully probated, and he never received any stock certificates for WGC. The Debtor also accuses the attorney in charge of administering his mother's estate of being inactive and/or unresponsive.

After his mother's death, the Debtor continued to serve as WGC's president. On September 9, 1997, he obtained a $40,000 line of credit from United Bank on behalf of WGC. The Debtor signed the credit documents as president, signed a personal guarantee, and at United Bank's direction, executed a corporate resolution granting him the authority to borrow money on behalf of WGC. As security for the loan, United Bank took an interest in WGC's inventory, equipment, accounts, general intangibles, and in a 1989 Whiteman/Conspray SV-50 Trailer Concrete Pump S#7891803 (the "Concrete Pump").

---

[1] In the post-trial briefing, the Debtor did not object to enlarging the complaint to include additional counts pursuant to 11 U.S.C. §§ 727(a)(4)(A) and (5).

The term of the September 9, 1997 loan was for one year; however, in 1998, 1999, and 2000, United Bank extended the loan's maturity date.  Pursuant to the 2000 modification, the principal balance owed was about $24,800 and the loan matured on September 9, 2001.  Even though the principal balance of the loan was not paid off in 2001, the Debtor stated that he ceased making any payments on the loan. According to the Debtor's Statement of Financial Affairs, however, WGC continued its business at least into 2004 inasmuch as the Debtor claims to have received income from WGC during that time.

When United Bank ceased receiving payments from WGC, United Bank contacted the Debtor to address the loan's deficiency balance.  Anthony Gentile, United Bank's market manager, testified that the Debtor was generally non-cooperative in helping to identify and locate the collateral for the loan.  In May 2005, United Bank specifically requested that the Debtor provide the location of the Concrete Pump, tools, and other equipment owned by WGC.  The Debtor replied that he no longer worked for WGC, he last saw the Concrete Pump at a job site, and that he did not know what had happened to the Concrete Pump or other equipment of WGC since that time.

On August 10, 2005, the Debtor filed his Chapter 7 bankruptcy petition.  In response to Question 1 on his Statement of Financial Affairs, he reported receiving income from WGC in 2004.  Question 18 on the Statement of Financial Affairs requires that the Debtor to divulge "the names, addresses, tax payer identification numbers, nature of the business, and beginning and ending dates of all businesses in which the debtor was an officer, director, partners, or managing executive of a corporation . . . or in which the debtor owned a 5 percent or more of the voting equity securities within the six years immediately preceding the commencement of the case."  In response to Question 18, the Debtor listed the name, address, and the nature of WGC's business.  On Schedule B, which requires that the Debtor list all personal property, including all stock interests and any contingent or non-contingent interest in the estate of a decedent, the Debtor did not list any stock ownership of WGC, any claim to the ownership of WGC's stock, or any claim of inheritance from his mother's estate.  When he testified at his § 341(a) meeting of creditors, the Debtor made the following statements:

> Trustee:     [O]n your Statement of Financial Affairs, the other thing you said was, that
> you were a supervisor.  Was that for, you doing business as Golden
> Concrete?

Debtor:    No.  I was appointed President of that company, and I had the authority to sign my name to it and when I filed bankruptcy, that's why I brought it to the attention of the lawyer I have here.  I didn't know if I was liable to it because I signed my name to it or what. . . . I have no interest in the company whatsoever.  I don't own no stock in it or nothing.

Trustee:    Who made you President?

Debtor:    Martha Frame.  She was an elderly lady and I sort of ran things for her.

. . . .

Mr. Bailey:    With respect to W. Golden Construction, who does own the stock?

Debtor:    Martha Frame.

Mr. Bailey:    Any are you the President?

Debtor:    Yeah, when I worked for them.

Mr. Bailey:    You no longer work for them?

Debtor:    No.

Mr. Bailey:    Are they still in business?

Debtor:    I have no idea.

Mr. Bailey:    How did you sever your relationship with them?

Debtor:    They had no work so I went to work for somebody else.

. . . .

Mr. Bailey:    What happened to the assets of W. Golden Construction?

Debtor:    I have no idea.

(Pl. Ex. 2).

After the trial in this case, United Bank discovered a complaint filed by Mooky Rebal against

– 4 –

various defendants in the Circuit Court of Fairfax County, Virginia. In that complaint, Mooky Rebal was stated to be an unincorporated proprietorship of its owner – the Debtor. At the Debtor's § 341 meeting of creditors, however, he stated that Mooky Rebal belonged to his daughter, Adrian Fedczak, and that he did not have any affiliation with it at the time. In response to United Bank's supplementation of the record, the Debtor produced numerous documents listing Mooky Rebal as belonging to Adrian Fedczak, and a letter from the Fairfax County, Virginia attorney stating that he had made a mistake in listing the Debtor as the owner of Mooky Rebal.

## II. DISCUSSION

United Bank argues that the Debtor should be denied entry of a Chapter 7 discharge under 11 U.S.C. § 727(a)(2)(A) on the basis that the Debtor intentionally concealed assets from his bankruptcy creditors. In the alternative, United Bank contends that the Debtor's discharge should be denied under § 727(a)(4)(A) for allegedly making false oaths, and under § 727(a)(5) for allegedly failing to satisfactorily explain the loss of assets. Because the court concludes that sufficient grounds exist pursuant to § 727(a)(2)(A), and, in the alternative, § 727(a)(4)(A), to deny entry of the Debtor's discharge, the court will not address United Bank's arguments under § 727(a)(5).

**A.     Concealment: § 727(a)(2)(A)**

United Bank asserts that the Debtor's discharge should be denied because he allegedly concealed the Concrete Pump from it, and concealed his ownership interest in WGC and Mooky Rebal from all his creditors. United Bank further contends that the Debtor's intent to hinder, delay or defraud it can be garnered from a string of allegedly bad acts dating back to 1997. The court, however, will only focus on the Debtor's alleged concealment of his ownership interest in WGC as the basis for granting United Bank's motion and for denying entry of the Debtor's discharge.

Section 727(a)(2) of the Bankruptcy Code directs the court to deny entry of a Chapter 7 discharge if the court finds that:

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has . . . concealed, or has permitted to be . . . concealed –
>> (A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate, after the date of the filing of the petition;

11 U.S.C. § 727(a)(2).

To prevail on a section 727(a)(2)(A) cause of action based on concealment, the moving party must generally prove five elements by a preponderance of the evidence: 1) the debtor 2) concealed 3) the debtor's property, 4) with the intent to hinder, delay, or defraud a creditor 5) within one year of bankruptcy. *In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002), *aff'd*, 540 U.S. 443 (2004); *see also Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993) (stating that the moving party under § 727(a)(2) bears the burden of proving that the debtor acted with the intent to hinder, delay, or defraud his creditors). No requirement exists in § 727(a)(2) that a creditor be harmed by a debtor's concealment of property. *E.g.*, *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000) (holding that a creditor's inability to reach the property as a matter of law was irrelevant to whether a violation of § 727(a)(2)(A) had occurred). Likewise, a transfer of property does not have to occur within the one-year period preceding the bankruptcy filing so long as the debtor is actively concealing that property within the statutory one-year time period. *E.g.*, *id.* at 684-84 (discussing and applying the doctrine of continuous concealment); *Thibodeaux v. Oliver (In re Oliver)*, 819 F.2d 550, 555 (5th Cir. 1987) ("[T]he concealment of an interest in an asset that continues, with the requisite intent, into the year before bankruptcy constitutes a form of concealment which occurs within the year before bankruptcy . . . such concealment is within the reach of section 727(a)(2)(A).").

Here, the Debtor testified that he was the former president of WGC, and, on his Statement of Financial Affairs, he stated that he continued to earn income from WGC as late as 2004. The Debtor further testified that his mother, who died in 1996, was the sole stockholder of WGC.

Notwithstanding his position as president, the Debtor claimed not to know who held the stock in WGC following his mother's death in 1996, and he professed to still being ignorant of who held WGC's stock when he filled out his bankruptcy petition and schedules in August 2005. In attempting to explain his ignorance, the Debtor testified that he was unfamiliar with the terms of his mother's will, and he did not learn of the will's contents until the initiation of this adversary proceeding. The Debtor further explained that he believed that his mother's estate was likely insolvent and he doubted that her will was ever fully

– 6 –

probated. At no time, the Debtor stated, did he ever receive any physical stock certificates for WGC. For these reasons, the Debtor did not consider himself to be the equitable owner of WGC; therefore, he did not disclose any ownership interest in WGC, any interest in his mother's estate, or any contingent claim on Schedule B related to WGC.

The Debtor did, however, list WGC on his Statement of Financial Affairs as both a source of income under Question 1, and under Question 18, which requires the Debtor to divulge "the names, addresses, tax payer identification numbers, nature of the business, and beginning and ending dates of all businesses in which the debtor was an officer, director, partners, or managing executive of a corporation . . . or in which the debtor owned a 5 percent or more of the voting equity securities . . . ." While the Debtor did not indicate the nature of his interest on the Statement of Financial Affairs, he did inform the Chapter 7 trustee at his meeting of creditors that he served as president of that corporation and that he did not own any stock.

The court finds that the stated reasons for the Debtor's failure to disclose a stock ownership interest in WGC are not credible. Significantly, the Debtor's mother died in 1996, and the Debtor's employment with WGC – as its president – continued at least until 2004 when the Debtor left to find other work. WGC was apparently a closely-held, family corporation, and the Debtor was aware that his mother owned the stock while she was living. The mere fact that the Debtor claims to have had no idea as to who owned the WGC stock following his mother's death, especially considering his lengthy employment as a corporate officer, is astonishing.

Moreover, the Debtor was less than forthcoming with his testimony at his meeting of creditors. When asked about who made him president, and who owned the stock for WGC, the Debtor failed to disclose that Martha Frame was his mother, that she passed away in 1996, and that at the time of her death, she owned all the stock in WGC. Instead, the Debtor merely stated that Martha Frame owned all the stock, explaining that she was an "elderly lady" and that he "sort of ran things for her." Based on these facts, the court is convinced that the Debtor was attempting to conceal his ownership interest in WGC at the time he completed his bankruptcy petition and schedules in August 2005, and that his active concealment continued at his subsequent meeting of creditors. Accordingly, United Bank has met its burden of showing that the debtor concealed the debtor's property within one-year of bankruptcy, and the

– 7 –

only remaining element left to be established is that the Debtor undertook this concealment with the intent to hinder, delay, or defraud a creditor.

An intent to hinder, delay, or defraud a creditor may be established by circumstantial evidence. *E.g.*, *In re Krehl*, 86 F.3d 737, 743 (7th Cir. 1996) ("The intent determination often will depend upon a bankruptcy court's assessment of the debtor's credibility, making deference to the court's finding particularly appropriate."). An actual intent to defraud may also be shown when the debtor acts with reckless indifference to the truth. *E.g.*, *Diorio v. Kreisler-Borg Constr. Co.*, 407 F.2d 1330, 1331 (2d Cir. 1969) ("Statements called for in the schedules, or made under oath in answer to questions propounded during the bankrupt's examination or otherwise, must be regarded as serious business; reckless indifference to the truth . . . is the equivalent of fraud."). As stated by one court:

> "Bankruptcy is not a game of hide and seek that the debtor plays with the trustee and the Court. Full disclosure is the quid pro quo for a debtor's discharge." It is not up to the trustee and other parties in interest to ferret out the truth about Debtors' assets and financial affairs. The critical time for disclosure is at the time of the filing of a petition and Debtors have the responsibility to do so. Bankruptcy law requires Debtors to be honest and to take seriously the obligation to disclose all matters.

*McDow v. Geddings (In re Geddings)*, No. 05-80183, 2006 Bankr. LEXIS 161 at *10-11 (Bankr. D.S.C. Jan. 27, 2006) (granting summary judgment on the trustee's motion to deny discharge under § 727(a)(2) when the debtors failed to report the sale of stock and failed to disclose their gross income from the operation of their businesses) (citation omitted).

Under the circumstances of this case, the court believes that the Debtor had the requisite intent to hinder, delay, or defraud his creditors when he failed to list any stock ownership interest in WGC on Schedule B, failed to disclose any interest in the estate of his deceased mother, failed to list any claim regarding WGC's stock, and when he testified at his meeting of creditors regarding the stock ownership of WGC. The transcript of Debtor's testimony at his meeting of creditors was consistent with what the court observed at trial: the Debtor generally appeared to be evasive in answering questions, and he did not appear to give forthright testimony. After listening to the Debtor's testimony on direct and cross examination, and after observing the Debtor's demeanor on the witness stand, the court did not find that the Debtor made a credible witness. In particular, the court found the Debtor's explanation concerning his

ostensible ignorance of WGC's stock ownership to be both implausible and contrived. The Debtor's concealment of his stock ownership interest, the objective facts demonstrating that the Debtor knew the status of the WGC stock before he filled out his bankruptcy schedules and statements, and his lack of credibility as a witness are sufficient grounds for United Bank to meet its burden of proof and burden of persuasion on its § 727(a)(2)(A) cause of action.

**B.      False Oath: § 727(a)(4)(A)**

United Bank asserts that the Debtor's discharge should be denied pursuant to 11 U.S.C. § 727(a)(4)(A) on the basis that the Debtor made false oaths when he: (1) failed to report an ownership interest in WGC on his petition and schedules, or at his § 341 meeting of creditors; (2) failed to disclose at his § 341 meeting that the "elderly lady" that owned WGC was his mother who had died nine years earlier; (3) stated that he had no idea what happened to the assets of WGC when he was the former president of that corporation; (4) stated that the books and records of WGC were in the possession of an accountant, and contradictorily, stated that they were lost in a flood; (5) stated in answers to interrogatories that no transfers were made from WGC to another company once operated by the Debtor – Fedz, Inc. – when that answer is contrary to the evidence; (6) stated that WGC paid him on commissions when he was unable to present any W-2 wage statements; and (7) failed to disclose any ownership interest in Mooky Rebal when Mooky Rebal had filed a relatively contemporaneous complaint stating the Debtor owned Mooky Rebal. The court, however, will only focus on the Debtor's failure to disclose his interest in WGC's stock as an alternative basis for denying discharge under § 727.

Section 727(a)(4)(A) of the Bankruptcy Code provides:

(a) The court shall grant the debtor a discharge, unless–
                                    . . .
       (4) the debtor knowingly and fraudulently, in or in connection with the case–
              (A) made a false oath or account . . . .


§ 727(a)(4)(A).

To succeed on a § 727(a)(4)(A) cause of action, the moving party must prove that: the debtor made a statement under oath; the statement was false; the debtor knew the statement was false; the debtor made the statement with fraudulent intent; and that the statement related materially to the bankruptcy case.

*Keeney*, 227 F.3d at 685.  The party objecting to discharge has the burden of proof by a preponderance of the evidence.  Fed. R. Bankr. P. 4005.

A debtor's signature avowing to the truth and correctness of the bankruptcy petition, schedules of assets and liabilities, and statement of financial affairs is undertaken on penalty of perjury.  Fed. R. Bankr. P. 1008 ("All petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746.").  Truth in reporting is consonant with the purposes of bankruptcy, which is to "give[] the honest but unfortunate debtor . . . a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt."  *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934); *In re Jarrell*, 189 B.R. 374, 377 (Bankr. M.D.N.C. 1995) (stating that bankruptcy does not afford a debtor a right to a "head start").  A debtor should make every attempt to report accurate information in the debtor's petition and schedules and "[n]either the trustee nor the creditors should be required to engage in a laborious tug-of-war to drag the simple truth into the glare of daylight."  *In re Tully*, 818 F.2d 106, 110 (1st Cir. 1987).

In proving an 11 U.S.C. § 727(a)(4)(A) cause of action, no requirement exists that there be some detriment to a creditor resulting from the false oath.  *Farmers Co-Operative Ass'n v. Strunk*, 671 F.2d 391, 396 (10th Cir.1982); *United States v. O'Donnell*, 539 F.2d 1233, 1237-38 (9th Cir. 1976).  The fact that a debtor may believe that omitted information concerned a worthless business relationship or holding is a specious defense; "[i]t makes no difference that he does not intend to injure his creditors when he makes a false statement [because c]reditors are entitled to judge for themselves what will benefit, and what will prejudice, them."  *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984); *In re Ingle*, 70 B.R. 979, 983 (Bankr. E.D.N.C. 1987) ("Creditors are entitled to truthful statements in a debtor's statement of financial affairs so that they may conduct their own investigations of those affairs.").

For the same reasons articulated by the court, supra, in determining that the Debtor should be denied a discharge under 11 U.S.C. § 727(a)(2)(A), the court also concludes that grounds exist to deny the Debtor's discharge under § 727(a)(4)(A) because the court is convinced that the Debtor knew that he had an ownership interest in WGC's stock at the time he filed bankruptcy, and at the time he testified at his meeting of creditors.  The Debtor purposefully chose, however, to represent that he had no interest in WGC's stock on Schedule B and at his meeting of creditors. Consequently, the court finds that the Debtor

-10-

knowingly and fraudulently made a false oath or account pursuant to § 727(a)(4)(A).

## IV. CONCLUSION

For the above-stated reasons, the court will grant the relief sought by United Bank in its adversary complaint and deny entry of the Debtor's discharge. The court will enter a separate order pursuant to Fed. R. Bankr. P. 9021.